FILED

UNITED STATES DISTRICT COURT 2016 MAR 31  PM 3: 26
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIDDLE DIST. ORLANDO, FL

THEODORE STONER, an individual, and
PLAYCYCLE, LLC, a Colorado limited
liability company,

CASE NO.: 6:16-CV-552-OCL-40KRS

    Plaintiffs,

v.

DRINK BLOCKS, LLC, a California limited
liability company,
and TOM WEISS, individually

    Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiffs THEODORE STONER ("Mr. Stoner") and PLAYCYCLE, LLC ("PlayCycle") through their undersigned counsel and for their Complaint against Defendants DRINK BLOCKS, LLC ("Drink Blocks") and TOM WEISS ("Mr. Weiss"), allege as follows:

## JURISDICTION AND VENUE

1. This action arises under the patent laws of the United States, 35 U.S.C. § 256, the Lanham Act, 15 U.S.C. § 1125(a), and under Florida law.

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338(a) and (b), diversity jurisdiction under 28 U.S.C. § 1332; and supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

3. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

1

4. This Court has personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193(1)(a) and (2), in that they are operating, conducting, engaging in or carrying on a business or business venture in this State and/or engaged in substantial and not isolated activity within this State.

5. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because Defendants are subject to personal jurisdiction in the District, and because a substantial part of the events giving rise to the claims and the subject matter thereof occurred within the District.

## THE PARTIES

6. Mr. Stoner is an individual who resides in Winter Park, Florida.

7. PlayCycle is a Colorado limited liability company, with its principal place of business in Winter Park, Florida.

8. Drink Blocks is a California limited liability company, with its principal place of business in Orange County, California.

9. Mr. Weiss is an individual who resides in Ladera Ranch, California.

## BACKGROUND

10. Since at least 1990, Mr. Stoner has been active in the business community focused on the development, manufacture, and sale of beverage containers. Mr. Stoner has developed unique skills, knowledge, and experience in this industry and a reputation as an innovator in this business community having been issued multiple patents related to beverage containers and their manufacture. *See, e.g.*, U.S. Patent No 5,154,295, field November 13, 1990 and U.S. Patent No. 5,339,975, filed July 1, 1992.

11. In or around 1994, Mr. Stoner conceived an idea for drink containers having protrusions (or lugs) and cavities allowing the containers to interlock. From 1994 to 1996, Mr. Stoner reduced his idea to practice including filing multiple patent applications covering aspects of the drink containers and methods of manufacturing same.

12. On December 1, 1994, Mr. Stoner filed U.S. Patent Application Serial No. 08/348,049, titled INTERLOCKING DRINK CONTAINERS AND RELATED PACKAGING.

13. On April 24, 1994, Mr. Stoner filed U.S. Patent Application Serial No. 08/638,955, titled APPARATUS FOR BLOW MOLDING INTERLOCKING DRINK CONTAINERS, which is a continuation-in-part application of U.S. Patent Application Serial No. 08/348,049. On April 7, 1998, the USPTO granted this application as U.S. Patent No. 5,736,170 ("the '170 Patent"). A true and correct copy of the '170 Patent is attached as Exhibit A.

14. Mr. Stoner is the sole inventor of the '170 Patent.

15. In or about March 2004, Mr. Stoner formed PlayCycle to develop, market, and sell interlocking drink containers.

16. In or about mid-2012, Mr. Weiss reached out to and contacted Mr. Stoner about the possibility of working with Mr. Stoner to develop, market, and sell interlocking drink containers. Mr. Weiss, having been involved in a prior, failed business venture related to spherical drink containers, repeatedly contacted Mr. Stoner to solicit Mr. Stoner to go into business with him.

17.   In September 2012, Mr. Stoner invited Mr. Weiss to his home in Winter Park, Florida where Mr. Stoner discussed with Mr. Weiss his designs and inventions related to interlocking drink containers.

18.   Mr. Weiss traveled to Mr. Stoner's home in Winter Park, Florida on multiple occasions to further discuss marketing and sale of the interlocking drink containers.

19.   On October 13, 2012, Mr. Weiss signed an agreement with PlayCycle to develop, market, and sell interlocking drink containers using Mr. Stoner's confidential business plans ("Marketing Agreement"). The key terms and conditions of the Marketing Agreement were memorialized in an email from Mr. Stoner dated September 26, 2012, and then signed and dated by Mr. Weiss, on both pages, on October 13, 2012. A true and correct copy of the Marketing Agreement is attached as Exhibit B.

20.   Under the Marketing Agreement, Mr. Weiss bargained for and obtained equity and the right to acquire substantial additional equity in PlayCycle, based on various terms and conditions set forth therein. Pursuant to the terms of the Marketing Agreement, and as the individual in whom PlayCycle and Mr. Stoner reposed their utmost trust and confidence and shared their sensitive, confidential and proprietary information, Mr. Weiss is a fiduciary of PlayCylce and Mr. Stoner, and owed them each a duty of loyalty and confidentiality.

21.   Under the Marketing Agreement, Mr. Weiss explicitly agreed to maintain the strict confidentiality of all of PlayCycle's trade secrets, intellectual property, and proprietary and confidential business information.

22. While operating under the Marketing Agreement, Mr. Weiss was given access to confidential, proprietary and/or sensitive business information and agreed not to disclose it to third parties.

23. Pursuant to the Marketing Agreement, Mr. Weiss was introduced to and, in some instances, developed substantial relationships with prospective or existing customers, financiers or other potential third party business relationships.

24. Pursuant to the Marketing Agreement, Mr. Weiss was made privy to marketing plans, techniques, concepts, designs, trade names, and trademarks, including but not limited PlayCycle's strategies for marketing, branding and labelling interlocking drink containers.

25. Further, in the Marketing Agreement Mr. Weiss specifically agreed that he would not compete with PlayCycle for a period of four years in the niche building block container business.

26. Also, in the Marketing Agreement, one of the assets under Mr. Weiss's control that he expressly agreed to assign and transfer to PlayCycle, for the benefit and use of PlayCycle, was the domain name <drinkblocks.com>. Pursuant to the Marketing Agreement, Mr. Weiss is obligated to effectuate the transfer of that domain name to PlayCycle.

27. On November 19, 2013, without knowledge of Mr. Stoner, Mr. Weiss filed U.S. Design Patent Application Serial No. 29/473,138 for STACKABLE SLIDER TOY BLOCK. Without knowledge of Mr. Stoner, Mr. Weiss assigned this design patent application to Drink Blocks. Mr. Weiss was the sole inventor listed in the design patent application. On November 25, 2014, the USPTO granted the design patent application as

U.S. Design Patent No. D718,394 ("the '394 Patent"). A true and correct copy of the '394 Patent is attached as Exhibit C.

28. At all times, Defendants have failed to correct the inventorship of the '394 Patent.

29. Nevertheless, the design claimed in the '394 Patent comprises the interlocking lugs conceived of by Mr. Stoner wherein the same lugs are positioned on a rectangular "block" in substantially the same location and orientation as that conceived of by Mr. Stoner and disclosed in his patent applications filed in the 1990's and his 2012 communications with Mr. Weiss.

30. Based on Mr. Stoner's prior conception of certain elements of the design claimed by the '394 Patent, including without limitation the interlocking lugs and their position and orientation on a rectangular "block," and Mr. Stoner's prior description of these concepts to Mr. Weiss at Mr. Stoner's home in Winter Park, Florida, Mr. Stoner should have been named as an inventor of the '394 Patent.

31. Since 2014, Defendants have marketed throughout the United States, including on the website drinkblocks.com, interlocking drink containers, comprising Mr. Stoner's designs, marketing, labelling, and other business plans.

32. Throughout their website drinkblocks.com, Defendants refer to their product as having "a patented bottle design" or "a patented 'building block' bottle design." *See, e.g.,* About – Drink Blocks, http://www.drinkblocks.com/about (last visited March 25, 2016), at true and correct copy of which is attached as Exhibit D. Defendants then indicate that their

product "was developed by beverage innovator Tom Weiss." *Id.* Defendants website makes no mention of Mr. Stoner or his contributions.

33.     Defendants have also sold such containers through various retail outlets including those in Florida. Defendants' blog located at blog.drinkblocks.com indicates that its interlocking drink containers are available from "select retailers" located in Florida. Exhibit E is a true and correct copy of an entry in Defendants' blog dated Aug. 10, 2015 titled "Where Can I Find Drink Blocks."

34.     Defendants have also sold the interlocking drink containers at issue in this lawsuit through the website Amazon.com, including causing such items to be sold and delivered to consumers in this District.

35.     On or about October 12, 2015, Mr. Stoner first discovered Defendants' marketing and sales of the interlocking drink containers comprising his designs. Thereafter, Mr. Stoner discovered Mr. Weiss's claimed design embodied in the '394 Patent.

36.     Since 2015, Mr. Stoner has continued to pursue manufacturing and sale of interlocking drink containers covered by his patents. Nevertheless, such efforts have been hindered by the '394 Patent which incorrectly lists Mr. Weiss as the sole inventor of a similar design.

37.     Given Mr. Stoner's stature in the beverage container community, as reflected in paragraph 10 above, he has a reputational interest in correcting the omission of his name and, therefore, evidence of his contributions to the '394 Patent.

38. Separately, Mr. Stoner has an economic interest in the '394 Patent and standing to bring this action. He has never assigned his rights in the '394 Patent by oral statement, writing, implication, nor any other means.

39. This action follows, and bears some relationship to, an action filed in the Superior Court for the State of California, for the County of Orange, styled *Tom Weiss and Drink Blocks, LLC vs. PlayCycle, LLC and Does*, Case No. 30-2016-00838203-CU-MC-CJC (the "Contract Action").

40. Through the Contract Action, Defendants seek to have the Marketing Agreement between Mr. Weiss and PlayCycle declared unenforceable.

41. Thus, Mr. Weiss seeks to deprive Mr. Stoner of any attribution for—or involvement in—the development, marketing, and sale of the interlocking drink containers Mr. Stoner conceived of in the 1990's.

## COUNT I – CORRECTION OF INVENTORSHIP
### (Under 35 U.S.C. § 256)

42. Plaintiffs repeat and reallege paragraphs 1 through 41 above.

43. Mr. Stoner conceived of and provided subject matter to named inventor Mr. Weiss, which is now included in the claimed design of the '394 Patent.

44. Mr. Stoner should have been named an inventor of the '394 Patent.

45. The '394 Patent was ultimately assigned to, and is presently owned by, Drink Blocks.

46. Mr. Stoner's omission as an inventor of the '394 Patent is not due to any deceptive intent on Mr. Stoner's part.

47. As an inventor, Mr. Stoner is entitled to certain property rights in the '394 Patent pursuant to 35 U.S.C. §§ 261 and 262.

48. Mr. Stoner is entitled to a judgment that he is an inventor of the '394 Patent and an order instructing the USPTO to correct the '394 Patent to properly reflect Mr. Stoner as one of the inventors thereof.

49. WHEREFORE, Plaintiffs hereby request that this Court enter judgment that Mr. Stoner is an inventor of subject matter claimed in the '394 Patent, and enter an Order directing the USPTO to correct the '394 Patent to name Mr. Stoner as an inventor thereof, pursuant to 35 U.S.C. § 256.

## COUNT II – BREACH OF CONTRACT

50. Plaintiff PlayCycle repeats and realleges paragraphs 1 through 41 above.

51. Mr. Stoner, on behalf of PlayCycle, and Mr. Weiss entered into a contract when they executed the Marketing Agreement on October 13, 2012.

52. Mr. Weiss has materially breached his obligations under the Marketing Agreement. Mr. Weiss has failed and refused to perform all of his obligations under the Marketing Agreement, including, but not limited to, his (a) breach of non-compete clause requiring that Mr. Weiss not compete with PlayCycle for a period of four years in the building block container business; (b) failure to maintain the strict confidentiality of all of PlayCycle's trade secrets, intellectual property, proprietary and confidential business information; and (c) failure to assign and transfer to PlayCycle the domain name <drinkblocks.com>.

53. Mr. Weiss's failures to perform in these regards each constitute a separate material breach of the Marketing Agreement that damaged Mr. Stoner and PlayCycle and otherwise caused harm.

54. Mr. Weiss has failed to cure his material breaches of the Marketing Agreement, even after notification of said material breaches.

55. As a direct and proximate result of Mr. Weiss's breach of the Marketing Agreement, PlayCycle has suffered immediate and substantial damages in an amount to be determined at trial.

56. WHEREFORE, Plaintiffs demand judgment against Mr. Weiss for damages, reasonable attorney's fees, specific performance, and court costs.

## COUNT III – BREACH OF FIDUCIARY DUTIES

57. Plaintiffs repeat and reallege paragraphs 1 through 41 above.

58. A business relationship was created between Mr. Weiss, PlayCycle, and Mr. Stoner when the parties agreed to carry on the business of jointly promoting PlayCycle and generating business opportunities for PlayCycle in the area of marketing, selling, and promoting interlocking drink containers.

59. In accordance with that relationship, Mr. Stoner entrusted his own as well as PlayCycle's confidential, proprietary and/or sensitive business information to Mr. Weiss.

60. Mr. Weiss agreed to maintain the strict confidentiality of all of PlayCycle's trade secrets, intellectual property, and proprietary and confidential business information.

61. In accordance with that relationship, Mr. Weiss agreed to execute the "highest and best legal and ethical practices for executing highest and best business plans to optimize [PlayCycle's] goals and objectives." Marketing Agreement, at 1.

62. In accordance with that relationship, Mr. Weiss undertook and duly assumed, and owed fiduciary duties to act solely in PlayCycle's best interests.

63. In accordance with that relationship, Mr. Weiss owed PlayCycle a fiduciary duty of confidentiality with respect to its trade secrets, intellectual property, and proprietary and confidential business information.

64. In accordance with that relationship, Mr. Weiss owed PlayCycle a fiduciary duty of loyalty and the commitment to always act in PlayCycle's best interests.

65. Unbeknownst to Mr. Stoner and PlayCycle, Mr. Weiss engaged in a pattern of misconduct with the ultimate goal and result of enriching Mr. Weiss and his own company, Drink Blocks, thereby usurping the corporate opportunities that Mr. Weiss was obligated to offer to PlayCycle.

66. Mr. Weiss thereby breached his duties to Mr. Stoner and PlayCycle.

67. As a direct and proximate result of Defendants' foregoing breaches of these duties, Plaintiffs have suffered damages, including without limitation, loss of revenue and profits, loss of other benefits paid to Mr. Weiss while he was competing against PlayCycle, loss of the use of PlayCycle's resources and personnel improperly diverted for Defendants' gain, loss of goodwill, and loss of business opportunities and opportunity costs in an amount to be determined at trial.

68. WHEREFORE, Plaintiffs hereby request an award of injunctive relief, damages, interest and costs together with such other relief as may be just or necessary under the circumstances.

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS
### (Under Fla. Stat. § 688.001 et seq.)

69. Plaintiffs repeat and reallege paragraphs 1 through 41 above.

70. Defendants used and disseminated trade secret information which was wrongfully misappropriated from Mr. Stoner and PlayCycle.

71. Defendants are competing with Mr. Stoner and PlayCycle to utilize the trade secret information provided to Mr. Weiss pursuant to the Marketing Agreement, including Mr. Stoner's designs related to interlocking drink containers and Mr. Stoner's confidential business plans for marketing, branding, labeling, selling, and otherwise promoting same.

72. The protected trade secret information, maintained by Mr. Stoner and PlayCycle and wrongfully misappropriated by Defendants, includes designs related to interlocking drink containers and Mr. Stoner's and PlayCycle's confidential business plans for marketing, branding, labeling, selling, and otherwise promoting same (the "Trade Secrets").

73. At all times relevant, Mr. Stoner treated the Trade Secrets as valuable, proprietary information.

74. At all times relevant, the Trade Secrets were the subject of reasonable efforts to maintain their secrecy.

75. At all times relevant, Mr. Stoner maintained the confidentiality of the Trade Secrets, sharing them only in confidence.

76. Mr. Stoner only disclosed the Trade Secrets to a limited group of persons and required such person to enter into a confidentiality agreement strictly limiting the use and disclosure of the Trade Secrets including, without limitation, the Marketing Agreement.

77. The Trade Secrets derive (or derived before they were misappropriated) independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by the competitors of Mr. Stoner and PlayCycle.

78. Defendants knowingly misappropriated the Trade Secrets.

79. Defendants had reason to know that the Trade Secrets were improperly obtained.

80. Defendants' acquisition, dissemination, and use of this trade secret information is without the express or implied consent of Mr. Stoner or PlayCycle.

81. The misappropriation of the Trade Secrets by Defendants was willful and malicious.

82. Mr. Stoner and PlayCycle will be irreparably harmed by Defendants' continued use of the Trade Secrets.

83. WHEREFORE, Plaintiffs demand judgment against Defendants for damages for the actual losses caused by the misappropriation, for the unjust enrichment caused by the misappropriation, injunctive relief pursuant to § 688.003, Fla. Stat., exemplary damages pursuant to § 688.004(2), Fla. Stat., requests the disgorgement of any profits, the return of the Trade Secrets, the imposition of a constructive trust, interest, reasonable costs and attorneys'

fees pursuant to § 688.005, Fla. Stat., and all such other relief as may be just or necessary under the circumstances.

## COUNT V – UNFAIR COMPETITION
### (Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

84. Plaintiffs repeat and reallege paragraphs 1 through 41 above.

85. Drink Blocks has made false or misleading representations regarding the nature and origin of its products. For example, the drink blocks website strongly implies that Drink Block's "patented 'building block' bottle design" was created solely by Mr. Weiss, when in fact the design of Drink Block's product was taken, at least in part, from designs developed by Mr. Stoner. On information and belief, such misrepresentations were made by or at the direction of Mr. Weiss.

86. Defendants made the same misrepresentation to the USPTO in the application that lead to the '394 Patent.

87. These misrepresentations are likely to cause confusion or mistake as to the origin of Drink Block's product.

88. Moreover, the statements contained Drink Block's website misrepresent the nature, characteristics, qualities, or origin of Drink Block's product.

89. Upon information and belief, Defendants were able to attract and develop substantial relationships with prospective or existing customers, financiers, distributors, or other potential third party business relationships for their own personal gain by representing Mr. Weiss as the sole inventor of the "patented 'building block' bottle design."

90. In addition, upon information and belief, Defendants represented or implied to customers, financiers, distributors or other potential third parties that they were conducting

business with or on behalf of PlayCycle or Mr. Stoner, when in fact they were soliciting business on their own behalf, which they never intended to share with Plaintiffs.

91. Plaintiffs have been damaged by these misrepresentations and will likely be further harmed should such misrepresentations persist.

92. Defendants' conduct thus is likely to cause confusion in the marketplace and likely has already caused confusion in the marketplace as to the origin or affiliation of the products offered by the parties hereto, thereby causing Plaintiffs damage, and if not enjoined, will cause irreparable harm to Plaintiffs, their goodwill and reputation in violation of the Lanham Act, 15 U.S.C. § 1125.

93. WHEREFORE, Plaintiffs hereby demand judgment for equitable and declaratory relief, damages, costs, interest, and any other relief that may be just or necessary under the circumstances.

## COUNT VI – FLORIDA COMMON LAW UNFAIR COMPETITION

94. Plaintiffs repeat and reallege paragraphs 1 through 93 above.

95. The foregoing conduct of Defendants constitutes an unfair method of competition including, but is not limited to, Defendants' (1) plan to usurp Mr. Stoner's designs and inventions related to interlocking drink containers, (2) misappropriation of Plaintiffs' Trade Secrets, (3) blatant disregard for the non-compete clause in which Mr. Weiss agreed not to compete with PlayCycle for a period of four years in the building block container business, and (4) false and misleading statements to the USPTO and in commercial advertisements.

96. As a consequence of the foregoing, Mr. Stoner has suffered and will continue to suffer irreparable harm and loss.

97. WHEREFORE, Plaintiffs hereby request an award of injunctive relief, damages, interest and costs together with such other relief as may be just or necessary under the circumstances.

## COUNT VII – VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(Under Fla. Stat. § 501.201, *et seq*. Deceptive Acts or Practices)**

98. Plaintiffs repeat and reallege paragraphs 1 through 97 above.

99. Defendants' conduct alleged herein constitutes unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.201 *et seq.*

100. Defendants acted wantonly, willfully, intentionally, maliciously and with total disregard for Plaintiffs' rights and property interests.

101. As a direct and proximate result of Defendants' foregoing wrongful conduct, Plaintiffs have suffered, and unless enjoined, will continue to suffer severe and substantial damages to their business, goodwill, and reputation.

102. Plaintiffs have no adequate remedy at law as monetary damages will not provide full and adequate relief for all of their injuries from Defendants' unlawful conduct.

103. WHEREFORE, Plaintiffs demand judgment against Defendants for injunctive relief under Fla. Stat. § 501.201 *et seq.* and for other relief thereunder, including reasonable attorneys' fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs request that all issues in this case be tried to a jury.

Dated: 3/31, 2016

Respectfully submitted,

*/s/ Gregory Herbert*

Gregory W. Herbert, Esq.
Florida Bar No. 0111510
herbertg@gtlaw.com
Joshua Brown, Esq.
Florida Bar No. 826391
brownjr@gtlaw.com
GREENBERG TRAURIG, P.A.
450 S. Orange Avenue, Suite 650
Orlando, FL 32801
Telephone No. (407) 420-1000
Facsimile No. (407) 841-1295